

**Michael H. Simon**, OSB No. 86090; msimon@perkinscoie.com
**Christopher L. Garrett**, OSB No. 03100; cgarrett@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: (503) 727-2000
Facsimile: (503) 727-2222

**ORIGINAL**

**Arlana S. Cohen**; asc@cll.com [admitted *pro hac vice*]
**Michael F. Maschio**; mfm@cll.com [admitted *pro hac vice*]
COWAN LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, NY 10036
Telephone: (212) 790-9200
Facsimile: (212) 575-0671

Attorneys for Defendant and Counterplaintiff Dessert Beauty, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **TREAT, INC.**, an Oregon corporation,<br><br>Plaintiff,<br><br>v.<br><br>**DESSERT BEAUTY**, a Barbados corporation,<br><br>Defendant.<br><br><br>**AND RELATED COUNTERCLAIMS** | NO. CV 05-923 PK<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS**<br><br>By Defendant and Counterplaintiff Dessert Beauty, Inc. |

i-    MEMORANDUM IN SUPPORT OF MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

# CONTENTS

I. INTRODUCTION ...................................................................................................1

II. STATEMENT OF FACTS .....................................................................................4

    A.    DBI's Products..............................................................................................4

    B.    Plaintiff's Products........................................................................................5

    C.    Procedural Background.................................................................................5

III. ARGUMENT .......................................................................................................6

    A.    Defendant Is Entitled To Summary Judgment On Plaintiff's First Cause Of Action For Trademark Infringement..................................................................6

        1.    Summary Judgment Standard.................................................................6

        2.    DBI's Fair Use Of The Term "Treats" Constitutes A Complete Defense To The Alleged Claim Of Trademark Infringement...................6

        3.    Plaintiff's Trademark Is Void *Ab Initio* Because Of Plaintiff's Fraud On The Patent And Trademark Office ........................................9

        4.    Summary Judgment Should Be Granted Because There Is No Likelihood Of Confusion.......................................................................10

    B.    Plaintiff's Claim For Trade Dress Infringement Should Be Dismissed Because Plaintiff Has Failed To Properly Allege That Claim.........................19

        1.    Legal Standard For Motion to Dismiss ..................................................19

        2.    Plaintiff Has Failed To Specifically Identify The Allegedly Protectable Elements Of Its Trade Dress, As Required ...........................19

        3.    Plaintiff Fails To Affirmatively Allege "Acquired Distinctiveness" .......21

        4.    If The Trade Dress Claim Is Not Dismissed, DBI Is Entitled To Summary Judgment Because The Concept Of Selling Beauty Products That Smell Like Food is Incapable Of Trade Dress Protection........................................................................................21

CONCLUSION.......................................................................................................23

ii- MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

[59764-0001/PA053490.033]

Defendant Dessert Beauty Inc. ("DBI") respectfully submits this memorandum in support of its motion for summary judgment on Plaintiff's claim of trademark infringement and its motion to dismiss or for summary judgment on Plaintiff's claim of trade dress infringement.

## I. INTRODUCTION

In this case, Plaintiff Treat, Inc. ("Plaintiff") seeks injunctive relief and damages from DBI on two grounds. First, Plaintiff alleges that DBI impermissibly uses the term "treats" in connection with its DESSERT beauty care products in purported violation of Plaintiff's alleged registered trademark TREAT AND DESIGN. However, the word "treats" is so descriptive of a quality or characteristic of such beauty care products that it is, in effect, generic for such products. DBI's use of the term "treats" not as a trademark but to describe its fragrances and hair, body, and lip products, does not constitute infringement. Second, Plaintiff purports to bring a claim for trade dress infringement, claiming that products that smell like food can constitute "trade dress."

As will be shown, this case has been brought without basis whatever. Thus, DBI moves herein to dismiss Count II of Plaintiff's Complaint and for summary judgment on both counts of Plaintiff's Complaint, on multiple grounds, any one of which is sufficient to dispose of this case. They are: (1) that DBI's use of the word "treats" is a "fair use" under the Lanham Act and as enunciated in the recent Supreme Court case *KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 543 U.S. 111, 125 S.Ct. 542 (2004); (2) that Plaintiff's alleged trademark is void *ab initio* because it was procured through fraud upon the U.S. Patent and Trademark Office; (3) that, in any event, there is no likelihood of confusion between the respective parties' products; and (4) that Plaintiff's claimed trade dress is unprotectable as a matter of law.

As to its trademark claim, Plaintiff claims, in effect, that only Plaintiff is entitled to use the word "treat" or even "treats" in the field of beauty products. However, like hundreds of other companies, DBI uses the word "treats" not as a trademark, but rather to describe, in its most

1-    MEMORANDUM IN SUPPORT OF MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

broad dictionary sense, the pleasurable aspects of its products, and also, in an even more literal sense, the fact that its products both smell *and* taste good. (DBI's products are "tastable.")

One cannot, by virtue of trademark registration or otherwise, gain the right to monopolize and/or prevent such literal uses of a descriptive word. As the Supreme Court has held:

> The common law's tolerance of a certain degree of confusion...followed from the very fact that in cases like this one an originally descriptive term was selected to be used as a mark, not to mention the undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first.

*KP Permanent Make-Up*, 543 U.S. 111, 125 S.Ct. at 550.

Plaintiff, in fact, has no trademark rights at all in the word "treat" alone. Plaintiff has obtained registration for the word "treat" in *combination* with its logo design, as shown below. Even then, Plaintiff was only able to do so by claiming to the United States Patent and Trademark Office ("PTO") that pre-existing trademarks for HAIR TREAT, SWEET TREATS, BEAUTY TREATS and QUICK TREAT were distinguishable from "treat." Notwithstanding this admission, Plaintiff claims in this case that DBI's use of the term "treats" on some of the packaging for its DESSERT line of products is an infringement of Plaintiff's trademark.[1]

Plaintiff's trademark is shown below, and is described in Plaintiff's own trademark application file at the PTO as "[a] flower composed of 8 petals surrounding a center circle on a square shaped contrasting background with the word 'treat' underneath." (Declaration of Sujata Chaudhri ("Chaudhri Decl."), filed concurrently herewith, at ¶ 11 and Ex. H.)

---

[1] As will be set forth *infra* while "registrations" do little more than give an owner thereof a presumption of validity, DBI also filed a counterclaim for fraud on the Trademark Office and moves also for summary judgment on this count of its counterclaim herein.

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222



Due to the descriptive nature of the word "treat," Plaintiff's trademark for "Treat and Design" is to be narrowly protected, if at all. In addition to DBI's products, hundreds of other beauty and cosmetic products currently on sale in the United States use the word "treats."

Given this crowded field, a comparison of the parties' respective products (which are shown below) makes clear that no similarity at all, let alone confusing similarity, exists with respect to the parties' respective trademarks or trade dresses. And, as will be shown, the products themselves are different—Plaintiff's products are bath and skin care treatments, while DBI's products are tastable hair, body and lip products.

 

Thus, no likelihood of confusion can be shown herein. In any event, DBI's use of the word "treats" falls squarely within the "fair use" defense codified in Section 33(b)(4) of the Lanham Act, as recently explained in *KP Permanent Make-Up*.

Here, the term "treats" has been used by hundreds of other parties in the beauty care industry to describe, as in its broad dictionary meaning, items which give pleasure, dating back for years. Even Plaintiff recognizes, through its admission in the PTO that it cannot "own" the word "treat" as against other marks (some of which pre-dated Plaintiff's) which used a second

3-    MEMORANDUM IN SUPPORT OF MOTION FOR
       SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

[59764-0001/PA053490.033]

word in combination with the word "treats."  DBI does not use "treats" or claim to own it as a trademark, but rather uses the word in its plain English sense.  Thus, as a matter of law, DBI is entitled to summary judgment based upon the fair-use defense.

Notwithstanding all of the above, Plaintiff continues recklessly to press its claims, not only against DBI but against all of DBI's customers, causing DBI to indemnify and defend this case not only on its own behalf but on behalf of nine major retailers in the United States (some of whom could likely choose to stop selling DBI's products, leaving DBI with no remedy for the harm caused thereby, since no bond has been posted by Plaintiff).

Accordingly, in light of the foregoing, this motion takes on an unusual urgency.  Unlike the typical "David and Goliath" scenario, here David is using this Court to harm Goliath not on the merits, but simply by bringing, and threatening to bring, its specious case against DBI and every cosmetic retailer with which DBI does business.

## II. STATEMENT OF FACTS

### A.    DBI's Products

DBI has sold fragrances and hair, body, and lip products under its DESSERT mark since at least as early as September 2003.  (Chaudhri Decl. ¶ 2).  Since then, DBI's DESSERT line of products has been extraordinarily successful.  DBI has spent millions of dollars in advertising its DESSERT line of products and has had sales also running into the millions of dollars.  DBI's DESSERT products are affiliated with and endorsed by Jessica Simpson, the famous actress and celebrity.  (Chaudhri Decl. ¶ 3).  DBI sells its products through national chain stores and online.

DBI's DESSERT line of products includes "tastable" fragrances and products for the hair, body, and lips.  These products are packaged in either a pink aerosol bottle or in pink packaging prominently bearing the word DESSERT in script above a cupcake design.  Within the cupcake design appear words describing the flavor of the product (examples include butterscotch toffee, banana split, bubble gum, and cotton candy).  DBI uses the word "treats" under the cupcake

4-   MEMORANDUM IN SUPPORT OF MOTION FOR
     SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

design.  A "™" symbol is used next to DESSERT to denote its trademark status.  No "™"

symbol is used next to "treats."  (Chaudhri Decl. ¶ 4 and Ex. C.).  Atop some of the products a

container of actual edible sprinkles appears, further evidencing the need to use the descriptive

word "treats" to describe these products.

**B.    Plaintiff's Products**

        According to the publicly available files of the Patent and Trademark Office, Plaintiff's

principal, counterdefendant Marnie Massie, began selling products bearing the name "Treat and

Design" through her company, Treat, Inc., in U.S. interstate commerce in June 2002.  (Chaudhri

Decl. ¶ 5 and Ex. D.)

        Most of Plaintiff's products are packaged in small boxes evoking a candy box on which a

label bearing the word "Treat" with its logo design is placed. (Chaudhri Decl. ¶ 6 and Ex. E.)

Some of Plaintiff's other products are packaged in see-through boxes shaped like truffles.  Other

products are packaged in tubs.  These packages also bear the label and the word "Treat" and its

logo design.  (Chaudhri Decl. ¶ 7 and Ex. F.)

**C.    Procedural Background**

        On or about March 29, 2005, Plaintiff's counsel sent a cease and desist letter to DBI

alleging, *inter alia*, that DBI's DESSERT product packaging uses the word "treats" in a way that

is confusingly similar to Plaintiff's "Treat and Design" mark and therefore infringes that mark.

(Chaudhri Decl. ¶ 12 and Ex. J.)

        DBI's counsel responded and notified Plaintiff's counsel that, in its opinion, Plaintiff's

allegations of infringement were completely unfounded.  (Chaudhri Decl. ¶ 13 and Ex. K.)

Nonetheless, Plaintiff thereafter filed its Complaint alleging infringement of its trademark and

trade dress.  The undisputed facts, however, show that DBI's use of the term "treats," always in

connection with its own trademark DESSERT in completely differing packages, does not

constitute infringement as a matter of law.  DBI has filed counterclaims seeking, *inter alia*, a

5-   MEMORANDUM IN SUPPORT OF MOTION FOR
     SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

declaration of non-infringement and cancellation of Plaintiff's trademark registration, and alleging a claim for tortious interference with economic relations.

## III. ARGUMENT

### A. Defendant Is Entitled To Summary Judgment On Plaintiff's First Cause Of Action For Trademark Infringement

#### 1. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact to be tried and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Although the initial burden is on the moving party to demonstrate the absence of a material factual issue, once that burden is met, the non-moving party cannot simply rest on its complaint setting forth a valid cause of action. *First Nat'l Bank v. Cities Services Co.*, 391 U.S. 253, 288-289 (1968). The non-moving party "must set forth specific facts showing there is a genuine issue for trial," and there must be more than merely "some metaphysical doubt as to [those] material facts." *Matsushita Elec. Indust. Co. v. Zenith Radio Com.*, 475 U.S. 574, 586 (1986) (citation omitted).

Summary judgment is as appropriate in trademark cases as any other where there are no material disputes of fact. *See M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005) (affirming grant of summary judgment on trademark infringement claim); *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 634 (9th Cir. 2005) (same); *American Circuit Breaker Corp. v. Or. Breakers, Inc.*, 406 F.3d 577, 586 (9th Cir. 2005) (same).

#### 2. DBI's Fair Use Of The Term "Treats" Constitutes A Complete Defense To The Alleged Claim Of Trademark Infringement

"Fair use is a defense to liability under the Lanham Act even if a Defendant's conduct would otherwise constitute infringement of another's trademark." *Cosmetically Sealed Industries v. Cheseborough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997); *KP Permanent Make-Up Inc. v. Lasting Impression I Inc.*, 543 U.S. 111 (2004).

6-    MEMORANDUM IN SUPPORT OF MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

Section 33(b)(4) of the Lanham Act defines fair use as "a use, otherwise than as a mark, of . . . a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party." 15 U.S.C. § 1115(b)(4).  As explained by the Southern District of New York:

> [t]he purpose of the defense is to prevent the trademark rights of one party from being extended to preclude another party from the description of his product to the . . . public. When the Plaintiff chooses a mark with descriptive qualities, the fair use doctrine recognizes that "he cannot altogether exclude some kinds of competing use," particularly those which use words in their primary descriptive and non-trademark sense.

*United States Shoe Corp. v. Brown Group, Inc.*, 740 F. Supp. 196, 198 (S.D.N.Y. 1990) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 12 (2d Cir. 1976)) (internal citation omitted).

In other words, "[t]he defense permits others to use protected marks in descriptive ways, but not as marks identifying their own products." *Cosmetically Sealed Industries*, 125 F.3d at 30 (citation omitted).

### a.    DBI Has Never Used Nor Claimed The Descriptive Term "Treats" As A Trademark

When the fair use defense is at issue, "[w]hat matters is whether the Defendant is using the protected word . . . descriptively, and not as a mark." *Car-Freshner Corp v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 269 (2d Cir. 1995) (citation omitted).  In determining whether a term is being used in a descriptive rather than a trademark sense, a court looks to the alleged infringer's "packaging, trade dress, and advertising." *Venetianaire Corp. of America v. A&P Import Co.*, 302 F. Supp. 156, 159 (S.D.N.Y. 1969).

In *Schmid Labs. v. Young Drug Prods. Corp.*, 482 F. Supp. 14 (D.N.J. 1979), the court found that the term RIBBED used by the defendant on its condom packaging was not a trademark use.  In particular, the Schmid court held:

7-    MEMORANDUM IN SUPPORT OF MOTION FOR
       SUMMARY JUDGMENT AND MOTION TO DISMISS

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

> [a] general examination of Defendant's package reveals that RIBBED is
> not used to 'identify and distinguish' Defendant's condoms . . . . Visual
> attention is not focused on the mark, but on the brand name TROJAN . . .
> Unless attention is drawn to the particular word or term as being indicative
> of source of origin of that product, the term is not being used as a
> trademark.

*Id.* at 20-21.  Similarly, in *Eli Lilly and Company v. Revlon, Inc.*, 577 F. Supp. 477 (S.D.N.Y.

1983), defendant Revlon's use of the descriptive term "lip repair cream" in connection with its

sale of a skin treatment product did not constitute trademark use, despite the fact that the plaintiff

marketed a similar product under the name of "Lip-Fix Cream." As here, both parties "agree[d]

that [the terms at issue were] an appropriate description for each of the products at issue and

[was] a description recognized in the beauty aid field." *Id.* at 482.  In finding that defendant's use

of the challenged phrase constituted fair use, the court found:

> Although Revlon has printed the words "lip repair cream" in large letters,
> those words do not indicate the origin of the product. The identification
> function is served by the European Collagen Complex trademark and the
> Revlon name, even though these are in smaller print.

*Id.* at 486.

      **b.**    **"Treats" Is A Commonly Used Descriptor In the Beauty And
Cosmetic Industry**

      In the instant case, DBI does not use the term "treats" to identify the source of the

products as being DBI.  Rather, the source identifier is DBI's trademark DESSERT.  As will be

shown, the word "treats" is commonly used in the beauty/cosmetic industry to describe and refer

to pleasurable products.  Hundreds of beauty and cosmetic products currently available for sale

in the United States using the word "treats" as part of their names.  (Chaudhri Decl. ¶ 14.)  Other

than good old soap and water, the entire cosmetic/beauty industry exists to sell "pleasure" or

"treats" and, therefore, such use by all of these companies is no coincidence.

      Indeed, Plaintiff repeatedly uses the words "treat" and "treats" in their common

descriptive sense on Plaintiff's own website, stating:

8-   MEMORANDUM IN SUPPORT OF MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

> *Indulge your skin with a nourishing Treat.*
>
> *Marnie wanted her treats to be tempting and indulgent.*
>
> *Next, Marnie needed to name these sweet delicious and decadent beauty treats . . .*

(Chaudhri Decl ¶ 15 and Ex. M.).

### c.    DBI's Use Of The Term "treats"

DBI places no special emphasis on the word "treats." The term "treats" appears on DBI's packaging in plain, without a "™" notice. (Chaudhri Decl. ¶ 4.) Contrastingly, the trademark DESSERT appears in script, followed by the "™" symbol designating it as a brand. (*Id.*) DBI always uses the well-known DESSERT mark in conjunction with the "treats" descriptor to impress upon the consumer the origin of the product. (*Id.*)

Further, DBI's usage of "treats" is the most apt word to describe items within its DESSERT line of products. That is, the edible nature of DBI's products makes them a treat for one's taste buds, similar to the foods they intend to taste like. These are purely descriptive and apt uses—the products are treats for both the body and the tummy.

Consequently, it is indisputable that DBI has used the term "treats" in a descriptive sense, in good faith, and not as a trademark.

### 3.    Plaintiff's Trademark Is Void Ab Initio Because Of Plaintiff's Fraud On The Patent And Trademark Office

On or about November 13, 2002, Plaintiff's principal, Massie, applied for the trademark "Treat and Design" claiming in a sworn statement to the Patent and Trademark Office that she had used the mark in commerce since June 21, 2002 on "bath and body care products and cosmetics, namely, bath and massage oils, facial masks, skin moisturizers, facial scrubs, body scrubs, sugar body scrubs, sugar hand scrubs, sugar foot scrubs, non-medicated foot creams,

9-  MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

perfumes, essential oils for personal use, soaps and face and skin cleansers." (Chaudhri Decl. ¶ 8 and Ex. G.)[2]

Neither upon such date of filing, nor to this day, has Plaintiff used its "Treat and Design" mark on either perfumes, soaps and facial masks. (Chaudhri Decl. ¶ 10 and Ex. I.) Thus, Plaintiff's trademark should be cancelled by this Court on the ground of fraud.[3] Case law makes clear that neither inadvertence nor lack of intent can shield an applicant from cancellation of its trademark for fraud upon the Patent and Trademark Office.

The Federal Circuit has held that a party alleging fraud has the burden of proving a false representation regarding a material fact and that the person making the false representation knew or should have known that it was false or misleading. *See, Metro Traffic Control, Inc. v. Shadow Network, Inc.*, 41 U.S.P.Q.2d 1369 (Fed. Cir. 1997). In an inquiry as to fraud, proof of specific intent to commit fraud is not required. *See, Medinol Ltd. v. NeuroVasx Inc.*, 67 U.S.P.Q. 2d 1205 (T.T.A.B. 2003); *General Car and Truck Leasing Systems, Inc. v. General Rent-A-Car Inc.*, 17 U.S.P.Q. 2d 1398, 1401 (S.D. Fla. 1990).

4.    **Summary Judgment Should Be Granted Because There Is No Likelihood Of Confusion**

Even assuming that the fair use defense does not apply and that Plaintiff's alleged trademark is not void *ab initio* because of Plaintiff's fraud on the Patent and Trademark Office, summary judgment should still be granted to DBI because Plaintiff cannot demonstrate a likelihood of confusion between Plaintiff's use of the mark "Treats and Design" and DBI's use of the word "treats" on its DESSERT line.

---

[2]  The Trademark Office later allowed Massie to place the application into Plaintiff Treat, Inc.'s name. (Chaudhri Decl. ¶ 9 and Ex. H.)

[3]  This Court has jurisdiction along with the Trademark Trial and Appeal Board to cancel trademarks. 15 U.S.C. § 1119.

10-  MEMORANDUM IN SUPPORT OF MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

Plaintiff must prove that DBI's use of the term "treats," always used in conjunction with its well-known trademark, DESSERT, is "likely" to cause "an appreciable number of ordinary prudent purchasers . . . to be misled . . . or confused as to the source" or origin of the beauty products in question. The test is whether a "likelihood of confusion" exists—"whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." The eight factors originally listed in *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), guide that inquiry. These factors are (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

The *Sleekcraft* factors are not of equal weight in all cases. They need to be balanced and adjusted to fit each case. For example, the similarity-of-marks factor standing alone "can be dispositive" and "warrant summary judgment for an infringement defendant." *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000). *See also Beverage Marketing USA, Inc. v. South Beach Beverage Corp.*, 2002 U.S. App. LEXIS 10655, at *2-3 (2d Cir. June 3, 2002) (same); *American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306, 309 (2d Cir. 1986) (reversing preliminary injunction; "Because there is no similarity between the two marks that might generate confusion between the two products, we need not weigh the various factors"); *Warner Bros. v. American Broadcasting Cos.*, 720 F.2d 231, 246 (2d Cir. 1983) (visual comparison of parties' products "establishes as a matter of law a lack of substantial similarity that would create a likelihood of confusion as to source"); *Scholastic Inc. v. Speirs*, 28 F. Supp. 2d 862, 871-72 (S.D.N.Y. 1998) (holding no need to apply various factors where no reasonable jury could find confusion because parties' skeleton images did not even look remotely alike); *Riverhead Paints Plus Inc. v. PPG Industries, Inc.*, 2 U.S.P.Q.2d 2035, 2037 (E.D.N.Y. 1987)

11- MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

("if a visual comparison of the marks by the court reveals that they are not substantially similar, the court may grant summary judgment for the defendant").

Application of the *Sleekcraft* factors here leads to the conclusion that DBI's use of the term "treats" is non-infringing.

### a.    Plaintiff's Mark Is Weak

Courts evaluate the classification of trademarks along a spectrum of four different categories: "generic," "descriptive," "suggestive," and "arbitrary." *Pizzazz Pizza & Rest. v. Taco Bell Corp.*, 642 F.Supp. 88, 91 (N.D. Ohio 1986). This classification is a mark's "inherent" strength; that is, the mark's strength by virtue of its inherent properties. *Trustco Bank, N.A. v. Glens Falls Nat'l Bank & Trust Co.*, 903 F. Supp. 335, 341 (N.D.N.Y. 1995).

A descriptive mark describes an ingredient, quality, characteristic, function, feature, purpose, or use of the relevant goods. *See, e.g., Induct-O-Matic Corp. v. Inductotherm Corp.*, 747 F.2d 358, 362 (6th Cir. 1984); *Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F. Supp. 129, 133 (S.D.N.Y. 1972); *cf. beef & brew, inc. v. Beef & Brew, Inc.*, 389 F.Supp. 179, 184 (D. Or. 1974) ("name that tells a diner what his dinner will be is descriptive").

A mark is suggestive if, rather than merely describing the product, it "suggests" the product, requiring the public exercise some degree of imagination to understand the intended use of the mark. *Induct-O-Matic*, 747 F.2d at 362-63.

Whether a mark is considered to be strong or weak is generally based upon the distinctiveness or non-distinctiveness of the mark is question. In this context, distinctiveness is generally understood to consist of an evaluation based upon the inherent distinctiveness of the mark itself and third party usage of the term as a trademark, especially in the market in question. Trademarks which are distinctive or strong will be given a greater scope of protection against conflicting marks. This conclusion is typically based on the assumption that marks which are found to be distinctive or strong carry greater psychological weight with buyers.

12-  MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

b.    **Third Party Registrations Are Relevant To Determine The Strength Of A Trademark**

A search of the records of the Patent and Trademark Office reveals many registrations for composite marks which include the words "treat" or "treats" and which are used on cosmetics, bath and beauty care products. Third party registrations are relevant to prove that a word or a segment of the marks used by different parties has a normally understood and well-recognized meaning, leading to the conclusion that the word or segment of the marks is relatively weak. *Red Carpet Corp. v. Johnston American Enterprises, Inc.*, 7 U.S.P.Q. 2d 1404, 1406 (T.T.A.B. 1988).

Third party registrations also have probative value to show the sense in which a word is used in ordinary parlance. That is, third party registrations are similar to dictionaries showing how language is generally employed. 2 *McCarthy on Trademarks and Unfair Competition* (4th ed.), Section 11.90 at 11-155 and 11-156. Indeed, DBI uses the word "treats" for the same reason.

The numerous registrations granted by the Patent and Trademark Office are probative to show how the word "treat/treats" is commonly used. The use of the word "treats" by Defendant is totally consistent with the manner in which the word is used in ordinary parlance. These facts urge the conclusion that Plaintiff's mark be given a narrow scope of protection.

c.    **The Widespread Use Of The Words "treat" and "treats" In The Beauty Industry Shows A Crowded Market**

There are hundreds of beauty care products on the market whose packaging uses the word "treat" or "treats." (Chaudhri Decl. at ¶ 14.)

The ultimate test of a mark's relative strength is the distinctiveness of a mark in the mind and perception of the relevant consumer group. Where there is widespread use of a term or mark by different entities for similar goods, this narrows the scope of protection to be afforded to each mark. *Puma-Sportschushfabriken Rudolf Dassler, K.G. v. Superga S.p.A.,* 210 U.S.P.Q. 316,

13- MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

317 (T.T.A.B. 1980). In addition, where there is widespread use of a word used in the marks of the contesting parties, this suggests that consumers have become so conditioned by the third-party uses for the same goods that consumers are accustomed to distinguishing between the marks on the basis of small differences. *General Mills, Inc. v. Health Valley Foods*, 24 U.S.P.Q. 2d 1270, 1278 (T.T.A.B. 1992). Evidence of extensive third-party use of trademarks which include the word "treat" or "treats" supports a finding that Plaintiff's mark is weak and entitled to only a narrow scope of protection.

Where numerous manufacturers sell products that utilize similar marks, individual distinctiveness is blurred and consumers may have difficulty in distinguishing the source of one product from another. In a situation where multiple parties use similar trademarks to designate the same or related products, it has been found that "if consumers don't have a clear sense of what Plaintiff's marks represent, they are unlikely to purchase defendant's product or service thinking it is Plaintiff's." *Source Services Corp. v. Chicagoland Job Source, Inc.*, 1 U.S.P.Q. 2d 1048, 1053 (N.D. Ill 1986).

In a crowded market where there is use of similar marks to designate similar products, each member of the crowd is relatively weak in its ability to prevent use by others in the crowd. This substantially limits the scope of protection to be afforded to any of the marks within that crowded field. *In re Lucky*, 209 U.S.P.Q. 422 (T.T.A.B. 1980).

The realities of the commercial marketplace show the distribution of bath, beauty and body care products by hundreds of parties using composite marks that have the word "treat" or "treats." Thus, Plaintiff's mark is entitled to only a narrow scope of protection, if any at all.

### d. Plaintiff Is Estopped From Asserting Rights Beyond Those Asserted In Its Application To The PTO

Even assuming that Plaintiff's trademark registration is not *void ab initio* due to fraud upon the Patent and Trademark Office, Plaintiff is constrained by the representations that it made to the PTO in order to gain protection. Once an applicant has limited the breadth of its rights in

14- MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

[59764-0001/PA053490.033]

documents filed with the PTO in order to obtain protection, the applicant is estopped from later arguing that its rights extend beyond those parameters. *Petro Stopping Centers, L.P. v. James River Petroleum Inc.*, 130 F.3d 88 (4th Cir. 1997).

Here, Plaintiff's own statements to the PTO show Plaintiff's knowledge of the abundance of third party registrations. Plaintiff was attempting to gain registration despite a pre-existing mark, HAIR TREAT. In doing so, Plaintiff argued that the PTO had allowed many third-party marks to co-exist which contain the word "treat" (or treats), reasoning that Plaintiff, therefore, should also be able to obtain such a registration.

Instructively, Plaintiff's trademark application argues as follows:

> While third party registrations are not evidence of the use of a mark in commerce, they do have probative value to the extent they suggest that the identified goods are of a type, which may emanate from a single source. The filings discussed below (copies of the full filing particulars of which are attached as Exhibit B for ease of reference) indicate that the United States Patent and Trademark Office routinely allows marks identifying goods in the same class to proceed to registration, even though they contain the shared word "treat."

> - AJR Productions, Inc., owns United States Application Serial No. 78,198,829 to register to mark TRICKS AND TREATS for cosmetics and personal care products classified in International Class 3. According to the file, the application has been approved by the examining attorney for publication for opposition, notwithstanding the pending earlier filed application by Apollo Products, Inc., to register in Class 3 the cited mark, which also contains the word "treat," and notwithstanding the other applications cited here.

> - Y.Z.Y., Inc., owns United States Application Serial No. 76,479,972 to register to mark FRENCH TREAT for cologne, perfumes, skin and body soaps, sprays, lotions and creams classified in International Class 3. According to the file, the Approved by the examining attorney for publication for opposition, notwithstanding the pending earlier filed application by Apollo Products, Inc., to register in Class 3 the cited mark, which also contains the word "treat," and notwithstanding the other applications cited here.

15- MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

[59764-0001/PA053490.033]

- Appollo Products, Inc. owns United States Application Serial No. 76,340,661 to register to mark HAIR TREAT for personal care products classified in International Class 3. According to the file, the Opposition period completed, a Notice of Allowance has been issued, notwithstanding the pending earlier filed application by Colgate Palmolive Company to register in Class 3 the mark TROPICAL TREAT (Serial No. 78,081,512) to identify personal care products, and notwithstanding the other applications cited here.

- The above applications are proceeding through the registration process notwithstanding other current registrations containing the word "treat" to and identifying products classified in International Class 3, including:

   o Registration No. 2,241,310 for SWEET TREATS, owned by Del Laboratories, Inc., to identify lip gloss in Class 3

   o Registration No. 2,583,716 for HEAT TREAT, owned by L'Oreal USA Creative, Inc., to identify hair care preparations in Class

   o Registration No. 2,561,657 for BEAUTY TREATS, owned by Beauty Treats International Co., Inc., to identify various cosmetics and personal care products in Class 3

   o Registration No. 2,481,296 for QUICK TREAT, owned by L'Oreal USA Creative, Inc., to identify hair care and hair styling preparations in Class 3

- Accordingly, Applicant submits that the dissimilarities between HAIR TREAT and TREAT AND DESIGN, when considered in their entities, preclude a finding of confusing similarity."

(Chaudhri Decl. ¶ 18 and Ex. H.)

In light of Plaintiff's earlier representations to the PTO, Plaintiff cannot now credibly claim that DBI's use of "treats" on its DESSERT products presents any chance of confusion. *Petro Stopping Centers*, supra.

<b>e.    Similarity of the Marks</b>

In light of the admitted weakness of the Plaintiff's mark, the Court then in this context evaluates the similarity of the marks. This element looks to "whether the similarity of the marks is likely to provoke confusion among potential customers." *W.W.W. Pharmaceutical*, supra, 984

16-  MEMORANDUM IN SUPPORT OF MOTION FOR
     SUMMARY JUDGMENT AND MOTION TO DISMISS

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Phone: (503) 727-2000
Fax: (503) 727-2222

[59764-0001/PA053490.033]

F.2d at 573.  In making this determination, a court should consider:  (1) "all factors which the buying public will likely perceive and remember," and (2) "the products' sizes, logos, typefaces, and package designs."  *Id.*

Given the weakness of Plaintiff's alleged mark and differences in the packaging of the parties' products, this factor weighs heavily in favor of DBI.  The prominence with which DBI's "DESSERT" mark and name appears on all of its packaging further diminishes any possibility that any appreciable number of consumers would be confused as to the origin of the respective products.  "[W]hen a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened."  *W.W.W. Pharmaceutical*, 984 F.2d at 573.  Clearly, due to the prominent use of the famous DESSERT name, consumer confusion about the origin of the products purchased is highly unlikely.

Also, in comparing the marks, this Court must view them "in their entirety and focus on their overall impressions, not individual features."  *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997); *K'Arsan Corp.*, 1998 U.S. App. LEXIS**18.  In this context, there is no support for any confusion because Plaintiff's use of the word "treats" is always accompanied by DBI's famous DESSERT mark on its products and advertising.  *Id.*  Where "common words" comprise marks at issue, "differences rather than the degree of similarity is likely to be more noticeable."  *Proctor & Gamble*, 485 F.Supp. at 1197.  DBI's use of its famous mark DESSERT provides a distinguishing factor sufficient to negate any possibility of confusion.  *See, e.g., Frisch's v. Shoney's*, 759 F.2d at 1266-1267 ("emphasis of Shoney's mark over any subsidiary 'product line' mark . . . reduces the likelihood of confusion").

Therefore, because the parties' products are sold with completely different packaging and promotions, there is no likelihood of confusion.  *Contrast Venetianaire Corp. of America*, supra, 429 F.2d at 1081 (confusion was likely where the mark on defendant's packaging was found in

17-  MEMORANDUM IN SUPPORT OF MOTION FOR
     SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

"the same exact configuration and location" as on the plaintiff's packaging, and where the goods were "sold in the same size wrapper, side-by-side, in retail stores").

As shown on page 4 above, the parties' respective products bear no resemblance in packaging design, color or shape. Plaintiff's products are sold in bottles and see-through boxes. DBI's products are sold in multi-colored packaging with a festive design, further heightening DBI's descriptive use of the word "treats." (Chaudhri Decl. at ¶¶ 4, 6, 7.)

### f. Similarity of the Products

Although both parties sell beauty care products, the products themselves are quite different. Plaintiff sells bath soaps, hand and foot cream, bath gels, and body scrubs. Plaintiff describes its product line as follows: "Treat Beauty is about soothing dry skin with indulgent sweetness with tempting treatments." Plaintiff's products are further described as including the scents and/or extracts of fruits, chocolates and vanilla, stating, "Marnie wanted her treats to be tempting and still nourish and sooth dry skin so she sweetened her recipes with vanilla extract and fruits." (Chaudhri Decl. at ¶ 19 and Ex. M.)

On the other hand, DBI sells no products which are treatments and does not advertise any of its body products as soothing dry skin. Instead, DBI sells products that are purely for fun, selling products such as "lickable" fragrances, body frosting, lip candy, and hair shimmer. (Chaudhri Decl. at ¶¶ 4, 16.) These products do not claim to offer any health benefits but are meant to make a user look and smell more attractive. Last but not least, unlike Plaintiff's products, DBI's products are tastable. (Chaudhri Decl. at ¶ 4.)

### g. Marketing Channels Used

Plaintiff's and DBI's products are not sold in the same marketing channels. DBI's beauty products typically are sold in the fragrance and shampoo aisle of a store while Plaintiff's products would be found in the bath product aisle of a store. Although sold in the same store, the fact that the products are sold in different aisles disfavors a finding of likelihood of confusion.

18- MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

*See Vitarroz Corp. v. Borden, Inc.,* 644 F.2d 960, 967 (2d Cir. 1981) (considering as a factor against finding likelihood of confusion the fact that BRAVO's crackers were shelved in a store's "cookies and crackers" section, while BRAVOS chips were shelved with "salty, crunchy snacks"); *Sunenblick v. Harrell,* 895 F. Supp. 616, 629 (S.D.N.Y. 1995) (finding no likelihood of confusion between jazz music and rap music both labeled "Uptown Records" and observing that "although the products are sold in the same channels of trade, they are not sold side-by-side; rather, they are featured in different sections of the stores in which they are sold, according to genre and not by label name"). *See also Mattel, Inc. v. MCA Records, Inc.,* 28 F. Supp. 2d 1120, 1149 (C.D. Cal. 1998) (finding non-infringement where "plaintiff has not shown that any of its products are sold in the music sections of these stores, where defendants' CDs are sold").

In short, examination of the *Sleekcraft* factors leads to the conclusion that DBI's use of term "treat" is non-infringing and that DBI is entitled to summary judgment on Plaintiff's claim of trademark infringement.

## B.    Plaintiff's Claim For Trade Dress Infringement Should Be Dismissed Because Plaintiff Has Failed To Properly Allege That Claim

### 1.    Legal Standard For Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) should be granted if the facts alleged in the Complaint, even if true, would still not entitle the plaintiff to a legal remedy. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). On a Rule 12(b)(6) motion, the court should "accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005).

### 2.    Plaintiff Has Failed To Specifically Identify The Allegedly Protectable Elements Of Its Trade Dress, As Required

Plaintiff's trade dress infringement claim should be dismissed because Plaintiff has failed to properly allege the protectable elements of its alleged trade dress. Trade dress is a product's total image and overall appearance as defined by its overall composition and design, including

19-  MEMORANDUM IN SUPPORT OF MOTION FOR
     SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

size, shape, color, texture, and graphics. *Jeffrey Milstein, Inc. v. Gregor, Lawlor, Roth, Inc.*, 58

F.3d 27, 31 (2d Cir. 1995) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765 n.1

(1992); *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 168 (2d Cir. 1991)).

However, in considering trade dress claims based on product *design* or *configuration* (as opposed

to packaging, words or labeling), "[c]ourts have exercised particular caution." *Landscape*

*Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) (citing *Jeffrey Milstein,*

*Inc.*, 58 F.3d at 32).

　　　In claiming protection of alleged trade dress, "the *Plaintiff must precisely articulate the*

*specific elements that comprise its distinct trade dress*, so that courts can evaluate claims of

infringement and fashion relief that is appropriately tailored to the distinctive combination of

elements that merit protection." *Best Cellars, Inc. v. Wine Made Simple, Inc.*, 320 F. Supp. 2d

60, 69 (S.D.N.Y. 2003) (emphasis added) (citing *Landscape Forms*, 113 F.3d at 381, noting that

a plaintiff must provide "a precise expression of the character and scope of the claimed trade

dress"). Moreover, a plaintiff's "focus on the overall look of a product does not permit a plaintiff

to dispense with an articulation of the specific elements which comprise its [allegedly] distinct

dress." *Landscape Forms, Inc.*, 113 F.3d at 381.

　　　Here, Plaintiff's trade dress claim arises out of the alleged rights in what Plaintiff defines

as "bath and body products that contain unique and distinctive design elements, including but not

limited to the food based scents of the products." Complaint ¶ 23. This definition of Plaintiff's

alleged trade dress is too vague to meet the requirement that a plaintiff articulate the "specific

elements" of its allegedly distinct dress. *See, e.g., Landscape Forms*, 113 F.3d at 381.

　　　In addition to failing to properly define the elements of its alleged trade dress, Plaintiff

does not even purport to limit its definition. Rather, Plaintiff claims rights in undefined design

elements "including but not limited to" the food-based scents of the products. Because Plaintiff

has not limited its alleged trade dress to any particular elements, its claim is so broad as to be

legally meaningless.

20- MEMORANDUM IN SUPPORT OF MOTION FOR
　　 SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

In the absence of specifically identified trade dress, it is impossible for DBI or the Court to evaluate Plaintiff's alleged claims of infringement. Absent such specificity, the Court could not "fashion relief that is appropriately tailored to the distinctive combination of elements that merit protection." *See, Best Cellars, Inc.*, 320 F. Supp. 2d at 69. In particular, the trier of fact would have no basis to evaluate the alleged scope of the protected trade dress and the alleged likelihood of confusion, which are necessary elements of Plaintiff's claim of trade dress infringement. Accordingly, this claim should be dismissed under Rule 12(b)(6).

### 3. Plaintiff Fails To Affirmatively Allege "Acquired Distinctiveness"

Plaintiff makes the alternative allegations that the alleged trade dress "is inherently distinctive *or* has acquired distinctiveness through secondary meaning, and consumers identify this trade dress with [Plaintiff]." Complaint ¶ 25. This is inadequate, because the Supreme Court has unequivocally held that there is no such thing as an inherently distinctive product configuration, and that product configuration trade dress or trademarks are only valid and protectable if they have *acquired* distinctiveness (secondary meaning) among consumers. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 215-16 (2000).

Plaintiff's Complaint, by its own terms, leaves open the possibility that Plaintiff's alleged trade dress has *not* achieved acquired distinctiveness (secondary meaning), and that Plaintiff is attempting to protect an alleged "inherently distinctive" product configuration trade dress. This possibility is precluded by the Supreme Court's *Wal-Mart* decision, and therefore Count II should be dismissed.

### 4. If The Trade Dress Claim Is Not Dismissed, DBI Is Entitled To Summary Judgment Because The Concept Of Selling Beauty Products That Smell Like Food is Incapable Of Trade Dress Protection

Plaintiff claims as its trade dress "bath and body products that contain unique and distinctive design elements, including but not limited to the food based scents of the products."

21- MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

Apart from the procedurally fatal deficiencies of this claim, such a "concept" cannot qualify as "trade dress" and is unprotectable as a matter of law.

Trade dress refers generally to the total image, design, and appearance of a product and may include features such as size, shape, color, color combinations, texture or graphics." *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). In order to function as a distinctive trade dress, a product design must be of such a type that it is likely to be understood by consumers as an indicator of a product's source. *See, e.g., Landscape Forms*, 113 F.3d at 380; *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1008-09 (2d Cir. 1996). Because "overextension of trade dress protection can undermine restrictions in copyright and patent law that are designed to avoid monopolization of products and ideas," courts will exercise particular "caution" before extending protection to product designs. *Jeffrey Milstein*, 58 F.3d at 32; *Landscape Forms*, 113 F. 3d at 380.

As explained in *Jeffrey Milstein*, in evaluating whether a particular claimed trade dress would likely be relied upon by consumers as a source identifier, a court must ensure that trade dress law is not used to protect "an idea, a concept, or a generalized type of appearance." 58 F.3d at 32. Where plaintiff's claimed dress is nothing more than a general concept or idea applied to a particular product, the purported trade dress will not serve to distinguish among competing goods in the minds of consumers and is thus incapable of protection under the Lanham Act. *Id.* at 33. *See, also, Atlantis Silverworks, Inc. v. 7th Sense Inc.*, 42 U.S.P.Q.2d 1904, 1909 (S.D.N.Y. 1997) (plaintiff's purported dress held generic where it sought protection for idea of adding seed beads to ring); *Fashion Victim, Ltd. v. Sunrise Turquoise, Inc.*, 785 F. Supp. 1302, 1308 (N.D. Ill. 1992) ("theme" of skeletons engaging in sexual activities used on T-shirt designs was too general to warrant trade dress protection); *Those Characters from Cleveland, Inc. v. J.J. Gams, Inc.*, 23 U.S.P.Q.2d 1109, 1115-16 (S.D.N.Y. 1992) ("generalized concept" of grotesque figures in toys cannot be protected).

22- MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

[59764-0001/PA053490.033]

Accordingly, if the Court does not dismiss Plaintiff's trade dress claim pursuant to Rule 12(b)(6), Plaintiff moves for summary judgment on that claim to the extent that Plaintiff bases its claim on the unprotectable concept of "food-based scents."

## CONCLUSION

Based on the foregoing, DBI requests that the Court grant summary judgment in favor of DBI on Plaintiff's claim for trademark infringement and dismiss Plaintiff's claim for trade dress infringement or grant summary judgment in favor of DBI on that claim.

DATED:  December 16, 2005.

PERKINS COIE LLP

By _____

**Michael H. Simon**, OSB No. 86090
**Christopher L. Garrett**, OSB No. 03100
Telephone:  (503) 727-2000

**COWAN, LIEBOWITZ & LATMAN, P.C.**
Arlana S. Cohen [admitted *pro hac vice*]
Michael F. Maschio [admitted *pro hac vice*]
1133 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 790-9237
Fax:  (212) 575-0671

Of Attorneys for Defendant and Counterplaintiff
Dessert Beauty, Inc.

23-  MEMORANDUM IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT AND MOTION TO DISMISS

[59764-0001/PA053490.033]

Perkins Coie LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  (503) 727-2000
Fax:  (503) 727-2222

## CERTIFICATE OF SERVICE

I certify that on Monday, December 16, 2005, I served the foregoing **MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS** on:

Leonard D. DuBoff
Marisa N. James
The DuBoff Law Group, LLC
6665 SW Hampton St., Ste. 200
Portland, OR 97223-8357
Attorneys for Plaintiff Treat, Inc. and
Counterdefendants

by causing a full, true, and correct copy thereof to be sent by the following methods on the date set forth below:

☐ by **mailing** in a sealed, first-class postage-prepaid envelope and deposited with the United States Postal Service at Portland, Oregon to all parties.

XX by **HAND DELIVERY.**

DATED: December 16, 2005.

PERKINS COIE LLP

By: _____
     Michael H. Simon, OSB No. 86090
     Christopher L. Garrett, OSB No. 03100
     Telephone: (503) 727-2000

1  CERTIFICATE OF SERVICE

[59764-0001/PA053210.052]