IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TREAT, INC., an Oregon corporation,                          CV. 05-923-PK

                Plaintiff,                          FINDINGS AND
                                                    RECOMMENDATION

v.

DESSERT BEAUTY, a Barbados corporation,

                Defendant.
_____

PAPAK, Magistrate Judge:

      Plaintiff Treat, Inc. (Treat) filed this action for trademark and trade dress infringement

against defendant Dessert Beauty, Inc. (DBI).  DBI counterclaimed for cancellation of Treat's

mark on the grounds that the mark is descriptive or generic and that Treat committed fraud on

the Patent and Trademark Office (PTO), and for tortious interference with economic relations

and defamation.


      Before the court are various motions filed by both parties.  First, both DBI and Treat have

Page 1 - FINDINGS AND RECOMMENDATION

moved for summary judgment on Treat's trademark infringement claim on the question of whether there is a likelihood of confusion. DBI has moved for summary judgment on Treat's trademark infringement claim on the additional grounds that (1) DBI's use falls within the fair use doctrine and is therefore protected, and (2) Treat's trademark is void ab initio for fraud. Treat has moved for summary judgment on DBI's counterclaim for cancellation (Count II), arguing that Treat's mark is suggestive, not generic or descriptive.

DBI has also moved to dismiss Treat's trade dress claim on the grounds that (1) Treat has failed to allege the specific elements that comprise the trade dress; and (2) Treat has failed to allege that the trade dress has acquired secondary meaning. In the alternative, DBI has moved for summary judgment on the trade dress claim arguing that food-based scent is not protectable trade dress as a matter of law.

Finally, Treat has moved to strike the Amended Declaration of Sujata Chaudhri (Chaudhri Declaration) and has moved for leave to file an amended complaint naming eight distributors of DBI's products as co-defendants.

For the reasons that follow, the parties's motions should be granted in part and denied in part as follows: Treat's motion to strike the Chaudhri Declaration should be denied; both parties' motions for summary judgment on the issue of likelihood of confusion should be denied; DBI's motion for summary judgment the issues of fair use and fraud should be denied; DBI's motion to dismiss Treat's trade dress claim should be granted, and Treat's request for leave to amend that claim should be denied; DBI's alternative motion for summary judgment on Treat's trade dress claim should be denied as moot; Treat's motion for summary judgment on DBI's counterclaim for cancellation on the grounds that the mark is generic or descriptive should be granted; and

Page 2 - FINDINGS AND RECOMMENDATION

Treat's motion for leave to file an amended complaint naming additional co-defendants should be granted.

## FACTUAL BACKGROUND

Treat makes bath and body products that smell like food items and, in some cases, are shaped like food items.  Treat's products are marketed and sold under the mark TREAT.  The TREAT mark is comprised of a flower with eight petals surrounding a center circle on a square shape contrasting background with the word "treat" underneath.

In November 2002, Marnie Massie, the owner and principal of Treat, applied to the United States Patent and Trademark Office for the trademark TREAT.    In her application, she made a sworn statement that she had used the mark in commerce since June 21, 2002 on "bath and body care products and cosmetics, namely, bath and massage oils, facial masks, skin moisturizers, facial scrubs, sugar body scrubs, sugar hand scrubs, sugar foot scrubs, non-medicated foot creams, perfumes, essential oils for personal use, soaps and face and skin cleansers."  (Chaudhri Decl., Exhibit G.)  On January 13, 2004, Treat obtained a federal registration for its mark.

Since September 2003, DBI has marketed and sold fragrance and beauty products under the mark DESSERT.  DBI's mark consists of the word "dessert" in script within a black circle.  DBI's DESSERT line includes lotions and other body products that smell and taste like food and are marketed using the term "Dessert treats."   The packaging for the Dessert treats products uses the DESSERT mark above a cupcake.  Directly below the cupcake is the word "treats."  DBI's website also uses the image and endorsement of Jessica Simpson, a well known celebrity.

In March 2005, counsel for Treat sent a cease and desist letter to DBI alleging that DBI's

Page 3 - FINDINGS AND RECOMMENDATION

use of the term "treats" on its packaging was confusingly similar to Treat's mark.  DBI's counsel

responded by stating that the allegations of infringement were unfounded.  Treat then filed this

lawsuit in June, 2005.

TREAT'S MOTION TO STRIKE

Treat moves to strike the Amended Declaration of Sujata Chaudhri, an attorney at the

New York firm representing DBI.  Treat argues that the Chaudhri Declaration should be stricken

because it is not based on personal knowledge, it is riddled with inaccuracies, and it is not based

upon a reasonable investigation of the facts.

I.      Legal Standard

Affidavits in support of or opposition to motions for summary judgment "shall be made

on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall

show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R.

Civ. P. 56(e).

II.     Analysis

After carefully reviewing the Chaudhri Declaration, the court finds that Ms. Chaudhri

limits her testimony to only those things within the scope of her personal knowledge.  Often that

personal knowledge is based on review of a document, which she has attached to the

Declaration.  Treat's arguments against the Chaudhri Declaration should be considered in

determining what weight should be given Chaudhri's testimony, and that determination should be

made by the ultimate finder of fact at trial, not the court at summary judgment.  Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir.

1997).

Page 4 - FINDINGS AND RECOMMENDATION

CROSS MOTIONS FOR SUMMARY JUDGMENT

I.      Legal Standard

Rule 56 of the Federal Rules of Civil Procedure allows the granting of summary

judgment:

> if the pleadings, depositions, answers to interrogatories, and
> admissions on file, together with the affidavits, if any, show that
> there is no genuine issue as to any material fact and that the
> moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©).

When considering a motion for summary judgment, the district court's role is not to

weigh the evidence, but merely to determine whether there is a genuine issue for trial.

Anderson, 477 U.S. at 249; Freeman, 125 F.3d at 735.

A party seeking summary judgment always bears the initial responsibility of informing

the district court of the basis for its motion, and identifying those portions of the record which it

believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett,

477 U.S. 317, 323 (1986).  Only after the moving party has made such a showing does the

burden shift to the opposing party to show that a genuine issue of fact remains.  See Fed. R. Civ.

P. 56(e).

To establish the existence of a genuine issue of material fact, the non-moving party must

make an adequate showing as to each element of the claim on which the non-moving party will

bear the burden of proof at trial.  See Celotex Corp., 477 U.S. at 322-23; see also Taylor v. List,

880 F.2d 1040, 1045 (9th Cir. 1989); Harper, 877 F.2d at 731.  The opposing party may not rest

on conclusory allegations or mere assertions, see Taylor, 880 F.2d at 1045; Leer v. Murphy, 844

F.2d 628, 631 (9th Cir. 1988), but must come forward with significant probative evidence, see

Anderson, 477 U.S. at 249-50; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  The

evidence set forth by the non-moving party must be sufficient, taking the record as a whole, to

allow a rational jury to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., 475 U.S. 574, 587 (1986); Taylor, 880 F.2d at 1045.

"Because of the intensely factual nature of trademark disputes, summary judgment is

generally disfavored in the trademark arena."  Interstellar Starship Services, Ltd. v. Epix Inc.,

184 F.3d 1107, 1109 (9th Cir. 1999) (citing Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352,

1356 n. 5 (9th Cir. 1985)).

II.    Analysis

    A.    Likelihood of Confusion

Treat alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114.  The test

of trademark infringement under federal law is whether there will be a likelihood of confusion.

M2 Software, Inc. v. Madacy Entertainment, 421 F.3d 1073, 1080 (9th Cir. 2005).  Both parties

have moved for summary judgment on the question of whether DBI's use of the term "treats" is

likely to cause confusion with the TREAT mark.

The likelihood of confusion test "requires the factfinder to determine whether a

reasonably prudent consumer in the marketplace is likely to be confused as to the origin of the

good or service bearing one of the marks."  Surfvivor Media, Inc. v. Survivor Productions, 406

F.3d 625, 630 (9th Cir. 2005) (citation omitted). To determine whether there is a likelihood of

confusion, the court considers the following eight factors: (1) strength of the mark; (2) proximity

of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing

channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser;

(7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.
AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). "The test is a fluid one and
the plaintiff need not satisfy every factor, provided that strong showings are made with respect to
some of them." Surfvivor Media, 406 F.3d at 631 (citation omitted).  The importance of each
Sleekcraft factor will vary depending on the facts of each case.  Brookfield Communications,
Inc. v. West Coast Entertainment Corp. 174 F.3d 1036, 1054 (9th Cir. 1999). See also
Dreamwerks Production Group, Inc. v. SKG Studio, 142 F.3d 1127, 1130 (9th Cir. 1998) (stating
that only three of the Sleekcraft factors were pivotal; the remaining five factors did not provide
much insight and thus carried little weight in the analysis).

   "Likelihood of confusion is a factual determination."  Thane Int'l, Inc. v. Trek Bicycle
Corp., 305 F.3d 894, 901 (9th Cir. 2002).  The Ninth Circuit has cautioned that "district courts
should grant summary judgment motions on the likelihood of confusion sparingly, as careful
assessment of the pertinent factors that go into determining likelihood of confusion usually
requires a full record."  Id. (citations omitted).

   1.  Strength of Mark

   "The purpose of examining the strength of the plaintiff's mark is to determine the scope
of trademark protection to which the mark is entitled."  Surfvivor Media, 406 F.3d at 631.  The
strength of a trademark is evaluated by examining two aspects of strength: conceptual strength
and commercial strength.  GoTo.com, Inc. v. Walt Disney Company, 202 F.3d 1199, 1207 (9th
Cir. 2000) (citing 2 McCarthy on Trademarks and Unfair Competition § 11:83 (4th ed.)
(hereinafter "McCarthy")).  Conceptual strength refers to the mark's placement on the continuum
of marks: generic, descriptive, suggestive, and arbitrary or fanciful.  GoTo.com, 202 F.3d at

Page 7 - FINDINGS AND RECOMMENDATION

1207.  Commercial strength refers to the mark's marketplace recognition value.  McCarthy at §
11:83.

      Trademark law places marks on a continuum according to their conceptual strength.
Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1141 (9th Cir. 2002).  At one end of the
continuum are generic marks.  Generic marks give the general name for the class of product and
simply state what the product is.  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150
F.3d 1042, 1047 n. 8 (9th Cir. 1998).  A generic mark is the least distinctive and, therefore, the
weakest.  Id.  Generic marks are not entitled to trademark protection.  KP Permanent Make-Up,
Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 602 (9th Cir. 2005).

      Descriptive marks "define qualities or characteristics of a product in a straightforward
way that requires no exercise of the imagination to be understood."  Kendall-Jackson Winery,
150 F.3d at 1047 n. 8.  An example of a descriptive mark is HONEY BAKED HAM.  Id.
(citation omitted).  "Although descriptive terms generally do not enjoy trademark protection, a
descriptive term can be protected provided that it has acquired 'secondary meaning' in the minds
of consumers, i.e., it has become distinctive of the trademark applicant's goods in commerce."
Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc., 198 F.3d 1143, 1147 (9th Cir.
1999) (citation omitted).

      Suggestive marks require the use of "imagination or any type of multistage reasoning to
understand the mark's significance."  Kendall-Jackson Winery, 150 F.3d at 1047 n. 8.
Suggestive marks suggest rather than describe a products features.  Id.  An example of a
suggestive mark is SLICKCRAFT for boats, Sleekcraft Boats, 599 F.2d at 349, or AIRCARE for
a service that maintains medical equipment for administering oxygen, Airco, Inc. v. Air Products

& Chemicals, Inc., 196 U.S.P.Q. 832, 835 (T.T.A.B. 1997).  Suggestive marks are protectable

without a showing of secondary meaning.  Japan Telecom, Inc. v. Japan Telecom America Inc.,

287 F.3d 866, 872 (9th Cir. 2002).  While the Ninth Circuit has stated that suggestive marks are

presumptively weak, see Brookfield Communications, 174 F.3d at 1058, a suggestive mark is

entitled to some trademark protection, Surfvivor Media, 406 F.3d at 632.

DBI argues that the TREAT mark is descriptive; Treat argues that the mark is suggestive.

Arbitrary or fanciful marks are the most distinctive and, therefore, the strongest.

Kendall-Jackson Winery, 150 F.3d at 1047 n. 8.  Arbitrary or fanciful marks are entitled to the

greatest scope of trademark protection.  Id.

DBI argues that the TREAT mark is descriptive; Treat argues that the mark is suggestive.

The determination of whether a mark is descriptive or suggestive depends upon the goods the

mark identifies.  Entrepreneur Media, 279 F.3d at 1142.  Here, TREAT is used to identify bath

and body products.  In that context, the court finds that the mark TREAT does not convey any

information about the type or purpose of the product.  It merely suggests that the product will be

enjoyable for the user.  Unlike the mark HONEY BAKED HAM, which clearly describes a ham

baked in honey, the mark TREAT requires some use of imagination to understand the

significance of the mark in relation to bath and body products. The court finds that TREAT is a

suggestive mark when applied to bath and beauty products.

DBI argues that in addition to it's inherent weakness, Treat's mark is weak because it is in

a "crowded field" of similar marks.  In other words, many beauty care product producers use the

term "treat" or "treats" on their products.  In his treatise, McCarthy explains the effect of a

crowded field on a mark's protection:

> "A mark that is hemmed in on all sides by similar marks on similar
> goods cannot be very 'distinctive.'  It is merely one of a crowd of

marks. * * * * In a 'crowded' field of similar marks, each member
of the crowd is relatively 'weak' in its ability to prevent use by
others in the crowd."

McCarthy at § 11:85.

Evidence of third party use of similar marks on similar good is admissible to show that a

mark is relatively weak and entitled to only a narrow scope of protection.  Miss World (UK) Ltd.

v. Mrs. America Pageants, Inc., 856 F.2d 1445, 1449 (9th Cir. 1988), *abrogated in part on other*

*grounds*, Eclipse Assoc. Ltd. v. Data Gen. Corp., 894 F.2d 1114, 1116 n. 1 (9th Cir. 1990) (noting

that the court in Miss World "misstated the standard of review" for a district court's finding of

likelihood of confusion).  Here, DBI presented evidence showing that hundreds of beauty care

products available on the market use the term "treat" or "treats" as part of their packaging.  This

evidence suggests that consumers are accustomed to distinguishing between products using the

term "treat" or "treats" on the basis of small differences in the marks and packaging,  General

Mills Inc. v. Health Valley Foods, 24 U.S.P.Q.2d 1270, 1278 (T.T.A.B. 1992) (noting that the

widespread use of the term "fiber" on cereal and food products suggests that customers are

accustomed to distinguishing between different FIBER marks, even on the basis of small

differences), and supports DBI's argument that the mark TREAT is weak and entitled to only a

narrow scope of protection.

DBI also points to third party registrations as evidence that the mark TREAT is weak.

While third-party registrations are relevant to prove that a word used in a mark has a normally

understood and well-known meaning, leading to the conclusion that the word is relatively weak

as a mark, Red Carpet Corp. v. Johnstown American Enterprises Inc., 7 U.S.P.Q.2d 1404, 1406

(T.T.A.B. 1988), DBI has not produced evidence to support its assertion that "a search of the

Page 10 - FINDINGS AND RECOMMENDATION

records of the Patent and Trademark Office reveals many registrations for composite marks

which include the word 'treat' or 'treats.'"  (DBI's Memorandum in Support of Motion for

Summary Judgment at 13.)

An inherently weak mark may be strengthened by recognition in the marketplace.

Entrepreneur Media, 279 F.3d at 1144.  Relevant factors to determine commercial strength

include advertising, length of use and public recognition.  Id. (citation omitted).  Here, Treat

argues that it has used the TREAT mark for over three years.  Treat does not provide any

evidence relating to advertising or actual public recognition.

Because of the inherent weakness of the descriptive mark and the evidence of a crowded

field, this factor weighs in favor of DBI.

### 2.    Proximity of the Goods

Under the second Sleekcraft factor, the courts assess whether the goods are related.

Sleekcraft Boats, 599 F.2d at 350.  Where the goods are "complementary," "sold to the same

class of purchasers" or "similar in use and function," the danger of confusion is heightened.  Id.

(citations omitted).

The products sold by Treat and DBI are undeniably related: both companies sell bath and

beauty products that smell like food. The distinction drawn by DBI, that Treat products are

intended to nourish the skin and DBI products are intended to be merely fun, is not convincing.

In addition, Treat produced evidence of statements on DBI's website indicating that DBI does

consider its products to be nourishing for the skin.  This factor weighs in favor of Treat.

### 3.    Similarity of the Marks

Page 11 - FINDINGS AND RECOMMENDATION

"Similarity of the marks is tested on three levels: sight, sound, and meaning." <u>Sleekcraft</u> <u>Boats</u>, 599 F.2d at 350.  Each of these must be considered as they are encountered by purchasers in the marketplace.  <u>Id.</u>  The fact finder must also consider the mark "within the context of other identifying features." <u>Surfvivor Media</u>, 406 F.3d at 633.

Here, there is undeniable sight and sound similarity between the TREAT mark and the DBI's use of the term "treats," and both companies use the term "treat" or "treats" to convey a delicious food item.  There is a genuine issue of material fact, however, as to whether the fact-finder should compare only the term "treat" or "treats" or take into consideration DBI's use of the Mark DESSERT and DBI's use of Jessica Simpson as a product identifier.  DBI argues that although both companies use the term "treat" or "treats," that similarity is offset by the fact that DBI always uses the mark DESSERT in combination with the term "treats" and uses Jessica Simpson as a source identifier for it's products.  In response, Treat presents evidence arguably showing that DBI sometimes uses the term "treats" alone, without the DESSERT mark or any reference to Simpson.

The court finds that resolution of this factor is not appropriate at this stage because there is a genuine issue of fact as to whether DBI always uses the term "treats" in combination with the DESSERT mark and/or Jessica Simpson.

4.      Evidence of Actual Confusion

"Evidence of actual confusion is strong evidence that future confusion is likely." <u>Official</u> <u>Airline Guides, Inc. v. Goss</u>, 6 F.3d 1385, 1393 (9th Cir. 1993) (citations omitted).  Because evidence of actual confusion is difficult to gather, however, the failure to prove instances of actual confusion is not dispositive.  <u>Sleekcraft Boats</u>, 599 F.2d at 353.  "Consequently, this factor

is weighed heavily only when there is evidence of past confusion or, perhaps, when the particular circumstances indicate such evidence should have been available." Id.

Here, Treat presents an affidavit from one woman, Elana Klein, stating that she attended a birthday party where Treat's "Sweet on You" product was given as a gift. Klein testifies that she believed the product to be from the "Dessert Treats" line and only later learned that it was not. (Klein Decl. at ¶¶ 3-4.)

While evidence of actual confusion can be quite significant, that significance is lessened where, as here, the plaintiff has proved only one instance of actual confusion and a reasonable juror could find that one instance *de minimis* and unpersuasive. See Entrepreneur Media, 279 F.3d at 1151 (where only one instance of actual confusion offered as evidence, and reasonable juror could find the evidence *de minimis* and thus unpersuasive, this factor did not weigh heavily in favor of summary judgment for plaintiff). "To constitute trademark infringement, use of a mark must be likely to confuse an *appreciable* number of people as to the source of the product." Id. (emphasis in original) (citations omitted). The court therefore finds that this factor weighs in favor Treat, but does not accord this factor much weight in the overall analysis.

### 5.    Marketing Channels

"Convergent marketing channels increase the likelihood of confusion." Sleekcraft Boats, 599 F.2d at 353. And where the two companies' "general class" of purchasers is the same, the likelihood of confusion is increased. Id.

Here, the parties admit that their products are sold in the same stores. Because the products sold by DBI and Treat are essentially similar and are sold in the same stores and to the same general class of purchasers, this fact weighs in favor of a finding of likelihood of

Page 13 - FINDINGS AND RECOMMENDATION

confusion.  See e.g. Tillamook County Smoker, Inc. v. Tillamook County Creamery Ass'n, 311

F. Supp. 2d 1023, 1042 (D. Or. 2004) (Creamery's marketing channels overlapped with those

used by Smoker where both companies sold products in supermarkets and both companies'

products were related low-dollar food products.)  DBI attempts to avoid this conclusion by

arguing that the products are displayed in different aisles of the stores, but offers no evidence to

support that assertion.

In addition, Treat has presented evidence showing that both Treat and DBI sell products

packaged with the word "treat" or "treats" over the internet, and that products from both

companies are currently available on three websites: www.amazon.com, www.sephora.com, and

www.ulta.com.  For example, Treat presented evidence showing that a search for the term "treat"

in the "bath and shower" section of www.amazon.com resulted in a display of Treat products

along with DBI's "Dessert Beauty Treats Deliciously Kissable Whipped Cream."  In response,

DBI points out that at each website the consumer is given the option of searching by

manufacturer. Given the crowded field of products using the term "treat" or "treats," DBI argues,

consumers are trained to look beyond the similarity resulting from use of the term "treat" or

"treats" to distinguish between the available products.  While that argument is persuasive on the

strength factor, it does not alter this court's conclusion that Treat and DBI utilized the same

marketing channels.  This factor weighs in favor of Treat.

6.     Type of Goods and Degree of Care Likely to be Exercised by the
       Purchaser

In considering this factor, the finder of fact must look to the "reasonably prudent

consumer."  Brookfield Communications, 174 F.3d at 1060 (citation omitted).  When goods are

Page 14 - FINDINGS AND RECOMMENDATION

expensive, a reasonably prudent consumer can be expected to exercise greater care in his or her

purchases. Sleekcraft Boats, 599 F.2d at 353. Conversely, when dealing with inexpensive

products, the reasonably prudent consumer is likely to exercise less care, making confusion more

likely. Brookfield Communications, 174 F.3d at 1060 (citation omitted).

Treat presents evidence showing that both Treat and DBI products are relatively

inexpensive, priced in the range of $6.00-$28.00. DBI does not dispute this evidence, but argues

that purchasers of beauty products, mainly women, are more discriminating than the average

buyer of a lower cost item. DBI does not present any evidence to support this conclusion, but

cites a 1959 case taking judicial notice of "a certain degree of sophistication of women

purchasers." Avon Shoe Co. v. David Crystal, Inc., 171 F. Supp. 293, 299 (S.D.N.Y. 1959).

The court finds that this factor weighs in favor of Treat.

       7.     Defendant's Intent

Neither DBI nor Treat made argument or presented evidence on this factor. DBI's intent,

therefore, does not contribute to the overall likelihood of confusion analysis.

       8.     Likelihood of Expansion of the Product Lines

If there is a strong possibility that either party may expand its business to compete

directly with the other party, that fact will weigh in favor of finding a likelihood of confusion.

Sleekcraft Boats, 599 F.2d at 354.

While Treat argues that it is "inevitable" that both parties will expand their product lines

to include identical goods, neither party presents evidence of intended expansion. See Surfvivor

Media, 406 F.3d at 634 ("[M]ere speculation is not evidence."). Accordingly, this factor does

not contribute to the overall likelihood of confusion analysis.

Page 15 - FINDINGS AND RECOMMENDATION

9.    Overall analysis of <u>Sleekcraft</u> factors

While the distribution of <u>Sleekcraft</u> factors favors Treat, summary judgment is not appropriate in this case.  First, one of the factors that favors Treat, evidence of actual confusion, could be determined by a reasonable juror to be of *de minimis* value and properly disregarded in the overall analysis.  Second, the court's finding that there is a genuine issue of material fact on the similarity of the marks, a factor which should weigh heavily in this case, makes resolution of that factor inappropriate at this stage of the case.  Finally, take away actual confusion and similarity, and we are left with strength, which favored DBI, and proximity and marketing, which favored Treat.  This court cannot recommend summary judgment on a two to one finding.

B.    Fair Use

DBI has also moved for summary judgment on it's statutory affirmative defense of fair use.  Fair use is defined in §33(b)(4) of the Lanham Act as,

> a use, otherwise than as a mark, of ⋯ a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of [a] party⋯.

15 U.S.C. § 1115(b)(4) (1994).  The fair use defense allows others to use an otherwise protected mark in its descriptive sense but not as an identifier of their own products.  <u>Cosmetically Sealed Industries, Inc. v. Chesebrough-Pond's USA Co.</u>, 125 F.3d 28, 30 (2nd Cir. 1997).

In order to prevail on the fair use defense, DBI must show that it (1) used the protected term descriptively, not as a mark, and (2) acted in good faith.  <u>Car-Freshner Corp. v. S.C. Johnson & Son, Inc.</u>, 70 F.3d 267, 269 (2nd Cir. 1995).

With respect to the first element of the fair use defense, DBI argues that it only uses the

Page 16 - FINDINGS AND RECOMMENDATION

term "treats" in conjunction with it's trademark DESSERT.  According to DBI, DESSERT is always in script with the "TM" noting a registered trademark, and "treats" is always in plain text with no "TM."  Treat responds by producing examples from DBI's website and an interview with DBI owner, Randi Shinder, where, Treat argues, the term "treats" is used to identify a line of products within the Dessert Beauty catalogue, and is not accompanied by the DESSERT mark. For example, Treat has produced a copy of an on-line interview wherein the statements "Treats gets even more fun this year" and "From the Treats collection, I love the Candy fragrance and the Cotton Candy everything" are attributed to Shindler.  (James Decl., Ex. A).

The court finds that Treat has produced sufficient evidence to create a genuine issue of material fact as to whether DBI's use of the term "treats" is descriptive only.  Accordingly, DBI's motion for summary judgment on this affirmative defense should be denied.

C.      Fraud

DBI has moved for summary judgment on it's third counterclaim, which seeks to have Treat's registration cancelled on the grounds of fraud.

"A trademark applicant commits fraud in procuring a registration when it makes material representations of fact in its declaration which it knows or should know to be false or misleading." Medinol Ltd. v. Neuro Vasx, Inc., 67 U.S.P.Q.2d 1205, 1209 (T.T.A.B. 2003). The party alleging fraud on the PTO bears the burden of proof.  Metro Traffic Control, Inc. v. Shadow Network, Inc., 41 U.S.P.Q.2d 1369, 1373 (Fed. Cir. 1997).

In 2002, when Massie applied to for registration of the TREAT mark, she made a sworn declaration that she had used the mark in commerce since June 21, 2002 on "bath and body care products and cosmetics, namely, bath and massage oils, facial masks, skin moisturizers, facial

scrubs, sugar body scrubs, sugar hand scrubs, sugar foot scrubs, non-medicated foot creams, perfumes, essential oils for personal use, soaps and face and skin cleansers."  DBI has alleged on information and belief that contrary to Massie's declaration, Treat did not use the mark TREAT on perfumes, soaps, or facial masks in 2002.  The only evidence DBI is able to offer is a page from Treat's internet website, downloaded and printed on December 15, 2005, which DBI claims shows that Treat's products do not include perfumes, soaps or facial masks.  (Chaudhri Decl., Ex. I.)  In response, Treat has offered a declaration by Massie, stating that in 2002 Treat did offer for sale a facial mask called "Saving Face," a soap product called "Lemon Drop," and a perfume product called "Sweet Blend."  Treat has also produced an invoice showing that these three products were available for sale in 2002.  (DuBoff Decl., Ex. A.)

The court finds that DBI has failed to meets its burden of showing that it is entitled to judgment as a matter of law on this counterclaim.  The court further finds that even if DBI had met its initial burden, Treat has produced sufficient evidence to show that a genuine issue of fact remains as to whether Treat did sell facial masks, perfumes and soaps in 2002.  DBI's motion for summary judgment on this counterclaim should therefore be denied.

D.    Cancellation

DBI's Counterclaim (Count II) for Cancellation of Registered Trademark alleges that because Treat's mark is merely descriptive and/or generic, the registration and the underlying mark is invalid and void and registration should be cancelled.  Treat has moved for summary judgment on this counterclaim, arguing that the mark is suggestive, not generic or descriptive.

As stated above, the court finds that the TREAT mark is suggestive, and Treat should therefore be awarded summary judgment on DBI's cancellation counterclaim.

DBI'S MOTION TO DISMISS

I.      Legal Standard

A motion to dismiss should be granted under Rule 12(b)(6) only if "it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1347 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987).  The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. Cassettari v. County of Nevada, 824 F.2d 735, 737 (9th Cir. 1987).

II.     Analysis

DBI has moved to dismiss Treat's claim for trade dress infringement on two separate grounds: failure to allege the specific elements of the trade dress, and failure to allege secondary meaning.

Trade dress is a product's total image and appearance, and may include the product's size, shape, color, color combinations, texture or graphics.  Int'l Jensen, Inc. v. Metrosound U.S.A., Inc., 4 F.3d 819, 822-23 (9th Cir. 1993).  Trade dress infringement is actionable under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Id. at 823 (citation omitted).

The test for trade dress infringement is whether the defendant's trade dress is likely to cause confusion with plaintiff's trade dress.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992). The focus in trade dress analysis is on the totality of the elements of the claimed trade dress:

> [T]he issue is not whether the Defendant's package or trade dress is identical to Plaintiffs in each and every particular.  Rather, it is the similarity of the *total*, overall impression that is to be tested.

McCarthy at § 8.2 (emphasis in original).  In order to state a claim for trade dress infringement,

therefore, a plaintiff must specifically define the list of elements that comprise the trade dress.

Best Cellars, Inc. v. Wine Made Simple, Inc., 320 F. Supp. 2d 60, 69 (S.D.N.Y. 2003);

McCarthy at § 8.3.  "Only then can the court and the parties coherently define exactly what the

trade dress consists of and determine whether the trade dress is valid and if what the accused is

doing is an infringement."  McCarthy at § 8.3.

       Treat's complaint alleges that it has developed a line of products that "contain unique and

distinctive design elements, including but not limited to the food-based scents of the products."

(Complaint at ¶ 23.)  DBI argues, and the court agrees, that this allegation is insufficient.  The

discreet elements that make up the alleged trade dress must be separated out and identified in a

list.  Landscape Forms, Inc. v. Columbia Cascade Co., 113 F.3d 373, 381 (2nd Cir. 1997);

McCarthy at § 8.3.  Treat does not dispute DBI's arguments, but asks the court for leave to

amend its complaint to specifically allege the elements of its trade dress.  At oral argument,

however, counsel for Treat was unable to identify any elements of the trade dress that it would

allege if given the opportunity to amend.  DBI's motion to dismiss should therefore be granted,

and Treat should not be granted leave to amend.

       In order to state a claim for trade dress infringement, a plaintiff must also allege that the

trade dress has acquired distinctiveness through secondary meaning.  Wal-Mart Stores, Inc. v.

Samara Bros., Inc., 529 U.S. 205, 215-216 (2000).  DBI argues that Treat's allegation that

"Treat's trade dress is inherently distinctive or has acquired distinctiveness through secondary

meaning" is insufficient.  Treat again responds by asking the court for the opportunity to amend

its complaint to allege that the products have acquired distinctiveness through secondary

meaning.  Because the court has recommended that DBI's Motion to Dismiss be granted without leave to amend for failure to set out the specific elements of the alleged trade dress, it would be futile to allow Treat to amend on to allege secondary meaning.  Accordingly, DBI's motion to dismiss should br granted and Treat should not be granted leave to amend.

DBI has also moved, in the alternative, for summary judgment on Treat's trade dress infringement claim on the grounds that the concept of beauty products that smell like food is incapable of trade dress protection.   Because the court has recommended that Treat's trade dress claims be dismissed, the court need not address DBI's alternative motion for summary judgment.

## TREAT'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Treat seeks leave to amend its complaint to add eight distributors of DBI's Dessert treats line as defendants.  Treat intends to allege claims against the eight distributors for trademark infringement and trade dress infringement.

I.    Legal Standard

Fed. R. Civ. P. 15(a) provides that a party must seek leave from the court to file an amended complaint if a responsive pleading has already been served.  Rule 15 provides that leave to file the amended complaint "shall be freely given when justice so requires."  In determining whether to grant leave to file the amended complaint, the court should consider the following five factors: bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether the party has previously amended his pleadings.  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995).


II.    Analysis

Page 21 - FINDINGS AND RECOMMENDATION

DBI argues that because the claims against the distributors are derivative from the claims against DBI, allowing Treat to amend its complaint is would slow resolution of the central issues in this case.  Treat responds by stating that if the motion is denied it will file against the distributors in a separate case, and that separate cases would not serve the overall goal of judicial economy.

Because the case is at a relatively early stage and DBI has failed to show bad faith on the part of Treat or any real prejudice to DBI, Treat's motion to amend should be granted.

CONCLUSION

For the reasons set forth above, Treat's Motion To Strike the Amended Declaration of Sujata Chaudhri (No. 56) should be DENIED.

In addition, for the reasons set forth above, DBI's Motion for Summary Judgment and Motion to Dismiss (No. 36) should be granted in part and denied in part as follows: DBI's motion for summary judgment on Treat's trademark infringement on the issues of likelihood of confusion, fair use should be DENIED; DBI's motion for summary judgment on its fraud counterclaim should be DENIED; DBI's motion to dismiss Treat's trade dress claim should be granted, and Treat should not be given leave to amend that claim; and DBI's alternative motion for summary judgment on Treat's trade dress claim should be DENIED as moot.

/ / / /

/ / / /

/ / / /

/ / / /

Finally, for the reasons set forth above, Treat's Motion for Summary Judgment (No. 61)

Page 22 - FINDINGS AND RECOMMENDATION

should be should be granted in part and denied in part as follows: Treat's motion for summary judgment on its trademark infringement claim should be DENIED; and Treat's Motion for summary judgment on DBI's counterclaim for cancellation on the grounds that the mark is generic or descriptive should be GRANTED.  And, Treat's Motion for Leave to File First Amended Complaint (No. 30) should be GRANTED.

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due May 19, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this 5th day of May, 2006.


    /s/ Paul Papak
Honorable Paul Papak
U.S. Magistrate Judge


Page 23 - FINDINGS AND RECOMMENDATION